R. A. Dempsey, Assignee for the Benefit of the Creditors of Huff Bros. & Company et al., Plffs. in Err., v. M. A. Harm, to the Use of S. G. Slike.

Dealing in margins is a gambling transaction which a court of justice will not sustain.

The assignment of a certificate of deposit to a broker as collateral security for margins in oil renders the broker merely the bailee of the assignor.

A certificate of deposit not being a negotiable instrument the transferees of the original parties must depend on the equities of those from whom they claim title, unless they have some new and independent equity of their own.

---

Cited in Durr v. Barclay, 8 Pa. Co. Ct. 285.

NOTE.—In Pennsylvania the rule that every wagering contract is void (Pritchet v. Insurance Co. [1803] 3 Yeates, 458); and that no action can be maintained by the winner for the recovery of an unpaid wager (Phillips v. Ives, 1 Rawle, 36; Edgell v. McLaughlin, 6 Whart. 178, 36 Am. Dec. 214); or even by a bona fide holder of a promissory note given for such wager (Harper v. Young, 112 Pa. 419, 3 Atl. 670); although the loser may, under some circumstances, recover his wager from the stakeholder (App v. Coryell, 3 Penr. & W. 494; Conklin v. Conway, 18 Pa. 329; Forscht v. Green, 53 Pa. 138; M'Allister v. Hoffman, 16 Serg. & R. 147, 16 Am. Dec. 556),—is strictly applied to dealing in "margins" and wagers upon the prospective prices of stocks, bonds, oil, grain, etc.

"A wager," said Judge HARE in Fareira v. Gabell, 89 Pa. 89, "may be defined as a contract in which the parties stipulate that they shall gain or lose upon the happening of an uncertain event in which they have no interest except that arising from the possibility of such gain or loss. . . . But it does not follow that every contract which produces such a result is a wager; the question is one of intention as deduced from the facts and circumstances.

Accordingly, no recovery can be had by an indorser after maturity, upon a note given in settlement of the maker's loss, by "selling short" certain stocks to the payee, without an intention actually to deliver the same. Brua's Appeal, 55 Pa. 294 (1867).

In an action by the assignee of one to whom the payee first assigned a cer-tificate of deposit against the maker, who is the subsequent assignee of the payee, the defendant may show as a defense that the certificate was assigned by the payee to the plaintiff's assignor as collateral security for the pay-ment of a gambling debt, or that the defendant was an innocent purchaser for value without notice.

Such a defense is a complete bar to the action unless the plaintiff was himself an innocent purchaser for value.

An assignment of error not founded on exception will not be considered.

Not decided whether, under the act of June 23, 1885, the panel in a civil action having been exhausted after sixteen jurors are called, the court may direct the sheriff to call talesmen from the bystanders.

(Argued May 10, 1887. Decided October 3, 1887.)

January Term, 1887, No. 166, E. D., before Mercur, Ch. J., Gordon, Trunkey, Sterrett, Green, and Clark, JJ. Error to the Common Pleas of McKean County to review a judgment on a verdict for the plaintiff in an action of assumpsit. Re-versed.

The facts as they appeared at the trial before Olmstead, P. J., are stated in the opinion.

The panel being exhausted after sixteen jurors were called, an order was made directing the sheriff to call talesmen from the bystanders. Defendants' counsel objected to the calling of talesmen, claiming that under the act of assembly of June 23,

A judgment entered upon a bond and warrant to cover "margins," though a declaration of no set-off has been executed, will not be enforced in the hands of an assignee who had no knowledge of the declaration; Griffith's Appeal, 16 W. N. C. 249; or had notice of the character of the transaction. Griffiths v. Sears, 112 Pa. 523, 4 Atl. 492.

In an action on a contract for future delivery, apparently lawful, for damages for failure to deliver oil when "called" according to the contract it is a good defense to show that the contract was made not with a bona fide intention to take the oil, but merely to settle differences (Kirkpatrick v. Bonsail, 72 Pa. 155); and a similar rule applies where the vendor is plaintiff in an action for damages for the purchaser's refusal to take oil according to contract (Scofield v. Blackmarr, 2 Sad. Rep. 544.

Where a broker advances money to carry on, for his client, a stock gam-bling operation he cannot recover the amount from his client. Fareira v. Gabell, 89 Pa. 89; Dickson v. Thomas, 97 Pa. 278.

If one lends money to another for the express purpose of having it used in speculation upon the rise and fall of prices, and the money is so used, the lender cannot recover it. He is particeps criminis. But mere knowledge that the money will be so used does not necessarily defeat his recovery; Waugh v. Beck, 114 Pa. 422, 60 Am. Rep. 354, 6 Atl. 923; the test is

1885, they have a right to twenty jurors called from the regular panel. Objection overruled and talesmen called. No exception. (First assignment of error.)

The jury having been sworn and the facts stated in the opinion having been testified to, Mrs. M. A. Harm was called as a witness, and testified as follows:

*Q.* You may state if you ever gave that certificate to one N. D. Preston?

*A.* I think I did.

*Q.* You may state what for?

*A.* For margins on buying oil. I gave it to him for margins on buying oil.

*Q.* What was the understanding with him at the time you gave it to him, about his returning it to you? What was the agreement between you at the time?

*A.* I think Mr. Preston said that if the market was in my favor he was to pay it back to me; and if not I don't know that anything was said about it. I don't think we talked about that. Brokers never talk about that part of it.

*Q.* How much did you owe him, if anything, at the time you gave him that certificate?

---

whether the plaintiff requires the aid of the wagering contract to establish his case. Lloyd v. Leisenring, 7 Watts, 294; Scott v. Duffy, 14 Pa. 18.

On the other hand money paid in settlement of differences or deposited by way of "margins" cannot be recovered (Merriam v. Public Grain & Stock Exchange, 1 Pa. Co. Ct. 478); although the rule is different in the case of an infant (Ruchizky v. De Haven, 97 Pa. 202); and an action cannot be maintained against a broker for violating an agreement to carry stocks. on "margin" for a specified time (North v. Phillips, 89 Pa. 250).

Of course these cases are inapplicable to bona fide time contracts for the sale and delivery of stocks and other personal property. The character of every transaction is for the jury. Smith v. Bouvier, 70 Pa. 325; Maxton v. Gheen, 75 Pa. 166.

If the contract is void by virtue of the act of 1794, the check given is void. Durr v. Barclay, 8 Pa. Co. Ct. 285. Money held by a stakeholder as the result of a wagering contract may be withdrawn. Dauler v. Hartley, 178 Pa. 23, 35 Atl. 857. And a note given in payment is uncollectible. Gaw v. Bennett, 153 Pa. 247, 34 Am. St. Rep. 699, 25 Atl. 1114. But a bona fide indorsee and holder for value, without notice and before maturity, of a promissory note given in a stock gambling transaction may recover against the maker. Northern Nat. Bank v. Arnold, 187 Pa. 356, 40 Atl. 794.

*A.* I don't think I owed him anything. We were expected to keep a few cents of margins good.

*Q.* How much, if anything, did you owe him on the 18th of May, 1882 (the day Mrs. Harm transferred the certif. to Preston)?

*A.* I don't think I owed him anything. We were expected, as I say, to keep a few cents of margins good.

*Q.* State whether or not Mr. Preston ever offered to return the certificate to you?

*A.* No.

*Q.* After you had given him the certificate, did he call on you for any money prior to May 18, 1882?

Objected to as incompetent.

Offered for the purpose of showing that she complied with the conditions on which this certificate was given to Mr. Preston.

Objection sustained and evidence excluded. Exception. (Eighth assignment of error.)

The court charged the jury, *inter alia,* as follows:

"Mr. Preston testifies that Mrs. Harm, in the middle of May, 1882, indorsed this certificate and transferred it to him for a valuable consideration and delivered it into his possession, and that on the 20th of May, the same year, he sold and delivered it to S. G. Slike." (Ninth assignment of error.) . . .

"What interest did Preston acquire by the transfer to him by Mrs. Harm of the certificate about the middle of May, 1882? . . . Preston says in his direct examination that he became the owner of it by purchase from Mrs. Harm." (Eleventh assignment of error.) . . .

"Now, you would have no great difficulty from the evidence of this witness alone (meaning Preston) in arriving at the conclusion that Preston was the owner of the certificate." (Twelfth assignment of error.) . . .

"The jury should observe that while she (Mrs. Harm) testifies in a guarded way that she was not, as she understands it, indebted to him at the time of the assignment, she corroborates Preston in his allegation that the transfer was to indemnify him against loss by the falling of the price of oil, and that oil fell and she subsequently paid him other moneys in addition to this certificate to keep up the loss. Does she state or intend to state that she did not become indebted to him to the full amount of

this certificate by reason of the depreciation in the price of oil before she transferred her interest in the certificate to Huff and Ege? What is the fair conclusion from the testimony of Preston and Mrs. Harm on this question? Did not the full amount of this certificate become absorbed by the falling price of oil, and did not, as a consequence under the agreement between them, Preston become the owner of the certificate with full right to transfer it to Slike or bring suit upon it in his own name as he saw fit? If you find that he did, then, as we understand the case, the defendant has no defense and the plaintiff is entitled to recover the full $3,000 and interest." (Thirteenth assignment of error.)

Verdict and judgment were for the plaintiff for $3,720.

*Morrison & Apple* and *Brown & Roberts,* for plaintiffs in error.—The purpose of the act of June 23, 1885 (P. L. 138), was to call the full number of jurors that could be called, provided each party exhausted his challenges. It therefore enacted that twenty jurors should be called, and thus each could challenge with the certain knowledge that the jury would be composed of those left, and neither be subjected to the unknown caprice of him upon whom the duty of calling talesmen would devolve. By the plain terms of the act it is directed that the twenty jurors shall be drawn from the box containing the names of those summoned for that court, and that the jury thus drawn shall be the jury to try the cause. This being the last legislation upon the subject, and no provision being made for drawing talesmen, without the consent of both parties to the suit a jury could not be legally constituted, either in whole or in part, by calling men from among the bystanders.

The undisputed evidence in the case is that Preston held the certificate as collateral security for margins on oil, which he was pretending to carry, on a gambling contract made with Mrs. Harm. Under any view of the evidence, he at most only held the certificate as collateral security for performance on her part of their contract. This being so, he could not sell and dispose of it without notice, and settlement and demand for the differences from her. Edwards, Bailm. §§ 275, 279, 282, 286; Davis v. Funk, 39 Pa. 243, 80 Am. Dec. 519.

The rule is the same, although the debt is payable presently and without demand, and although by the terms of the pledge

the creditor may sell at public or private sale without notice. Wilson v. Little, 2 N. Y. 443, 51 Am. Dec. 307.

The consignee is bound to give notice of a decline and make an actual demand for the margins. Milliken v. Dehon, 27 N. Y. 364.

The holder of a collateral security cannot appropriate it in satisfaction of his debt at his own option. Sitgreaves v. Farmers' M. Bank, 49 Pa. 359; Diller v. Brubaker, 52 Pa. 498, 91 Am. Dec. 177; Conyngham's Appeal, 57 Pa. 474.

*M. F. Elliott, R. Brown,* and *D. H. Jack* for defendant in error.

OPINION BY MR. CHIEF JUSTICE GORDON:

On the 4th day of March, 1883, H. B. Huff and J. A. Ege, doing business as Huff Brothers & Company, executed to Mrs. M. A. Harm a certificate of deposit, payable with interest, in one year after date, in the sum of $3,000. Some time in May following Mrs. Harm transferred this certificate, as collateral security, to cover differences or margins in the purchase and sale of oil, to N. D. Preston, who in turn, on the 20th of the same month, assigned it to S. G. Slike, the plaintiff below. Again, on the 28th of June then next, Mrs. Harm, for an alleged valuable consideration, assigned all her right, title and interest, in and to the said certificate, to Huff Brothers & Company.

Now, the paper in controversy not being negotiable, the transferees of the original parties must depend upon the equities of those from whom they claim title, unless these transferees have some new and independent equity of their own. If, indeed, Slike was an innocent purchaser for value, and if of this fact Huff Brothers & Company had notice, he would as against them be entitled to recover at least the amount which he paid to Preston for the paper.

How then stand the original parties: Preston and Mrs. Harm? Clearly, if Preston is to be believed, he was a holder without consideration. He says: "She was to give me these certificates of deposit, and in case her oil rendered a profit I was to return the certificate of deposit, so that the interest should not be broken; and in case the market should decline to a place where the certificates were eaten up, it was to be my property. They were to become my property if they were

nearly taken up by the decline, and in case the oil rose I was to return her certificates. If oil advanced so that she could settle up, I was to give her money for her profit and give her certificates back again, which I had done on former occasions."

This was clearly gambling upon the price of oil; as he says afterwards a dealing in differences, which, as we have repeatedly ruled, is a transaction of such a nature as cannot be sustained in a court of justice. It follows that the court made a mistake in excluding the defendant's offer covered by the eighth assignment; for any and all evidence tending to show the real character of the transaction ought to have been admitted.

It was also error to instruct the jury that Preston had testified that Mrs. Harm had transferred the certificate to him for a valuable consideration, for his evidence shows very clearly that the consideration was illegal and void. Nor was it less erroneous to charge as follows: "Now, gentlemen, you would have no great difficulty, from the evidence of this witness alone, in arriving at the conclusion that Preston was the owner of the certificate." On the evidence "of this witness alone" the instruction should have been that Preston was not the owner of this certificate, but a mere bailee for Mrs. Harm.

What has been said sustains the eighth, ninth, eleventh, twelfth, and thirteenth assignments; the first, not being founded on an exception in the court below, we refuse to consider, and the others are not sustained.

The judgment is reversed and a new *venire* ordered.